## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PETER M. WALLACE,

        *Plaintiff*,

vs.

        Case No. 07-2379-EFM

MICROSOFT CORPORATION,

        *Defendant.*

## MEMORANDUM AND ORDER

Presently before the Court is Defendant Microsoft Corporations's ("Microsoft") Motion for Summary Judgement (Doc. 74) for all claims brought against it by Plaintiff Peter M. Wallace ("Wallace").  For the following reasons, the Court grants the motion.

### I.  Background

The following facts are either uncontroverted or taken in the light most favorable to the non-moving party.[1]

On December 1, 2000, Wallace received a written offer of employment from Microsoft for the position of Consultant, which he accepted by signing the document on December 4, 2000.  The offer letter outlined Wallace's starting salary, along with various benefits provided by Microsoft to

---

[1] Some facts set forth may have been identified as controverted in the parties briefings; however, the Court finds that the parties were controverting the inference that could be drawn from the facts rather than the actual facts themselves.

-1-

its employees, such as a 401(k) savings plan, relocation assistance, and an optional Employee Stock Purchase Plan ("ESPP"). The ESPP provides employees a convenient method of becoming shareholders in the company by permitting them to voluntarily purchase Microsoft stock at a reduced rate. The ESPP has no vesting mechanism, and does not provide any medical or disability benefits, nor does it provide retirement income or income deferral to employees, and terminates upon an employee's termination. The letter also contained an at-will employment provision informing Wallace that the employment relationship was voluntary, based on mutual consent, and terminable at will by either party at any time, for any reason, with or without cause or notice. Moreover, the letter provided that modification of the at-will relationship could only be accomplished through a formal written employment contract signed by Wallace and an officer of Microsoft.[2]

Wallace subsequently entered into an Employee Agreement ("Agreement") with Microsoft on December 21, 2000. The Agreement contained a similar at-will provision as the offer letter, providing that Wallace's at-will employment status "may only be modified by a formal written "Employment Contract" signed by [Wallace] and an officer of Microsoft and containing language expressly stating Microsoft's agreement to modify the terms of [the] Agreement."[3] Other provisions within the Agreement are inapplicable to the claims in this action and will not be addressed.

Wallace claims that in 2003, a subsequent employment contract was entered into between himself and Microsoft. The 2003 contract was the result of a sexual harassment claim he was contemplating against a former supervisor. As part of the 2003 contract, Wallace was moved to an alternate position reporting to a new supervisor. Wallace signed the 2003 agreement, gave it to his

---

[2]Doc. 75-5.

[3]Doc. 75-22.

then supervisor Brian Field, after which Wallace never saw it again.  Wallace never received a copy of, nor has he ever seen, the contract with the signature of a Microsoft officer.[4]  Wallace did not retain a copy of this contract, nor has Microsoft produced a copy during discovery.

During his employment with Microsoft, Wallace traveled to St. Louis, Missouri, Houston, Texas, and Chicago, Illinois to perform on-site work for clients that included providing services and training on the programming changes being made to the customer's software systems.  On January 28, 2004, while working on an assignment in Chicago as a Senior Consultant for Microsoft, Wallace suffered an on-the-job injury, which required him to be placed on unpaid workers' compensation leave on January 30, 2004.  That same day, Microsoft provided Wallace with an electronic link to information describing Microsoft's workers' compensation policies, which included information on the Federal Family Medical Leave Act ("FMLA"), which included the specific types of leaves of absences addressed by the FMLA.  Wallace subsequently reviewed this information, and on February 4, 2004, informed Microsoft of his intent to file a workers' compensation claim.  Wallace returned to work from unpaid leave on February 25, 2004, in which he worked from home with medical restrictions.  Wallace filed his workers' compensation claim on or about February 26, 2004.  On or about January 31, 2008, Microsoft settled Wallace's workers' compensation claim for $721,909.02.

Wallace's wife gave birth to a child on February 10, 2004, while he was on unpaid leave due to his injury.  Microsoft's parental leave policy, also known as infant care leave, permits a new parent to take up to twelve weeks of leave within the first year after a child's birth, or after the placement of a child through adoption.  Of these twelve weeks, the first four are paid, and the

---

[4]While Microsoft does not contest Wallace's assertion that he had a dispute with a former supervisor, Microsoft disputes the existence of a 2003 contract, and disputes the existence of any written agreement subsequent to the December 2000 Agreement that sets forth any minimum employment period or alters Wallace's at-will status.

remaining eight are unpaid.  Microsoft's policy requires that if an employee chooses to take leave under its parental leave benefit that it be taken in one continuous block.  Parental leave is not mandatory, and must be requested by an employee at least fifteen days in advance before receiving any compensation or leave.  An otherwise eligible employee who does not request to take leave under the policy does not receive any leave or compensation from Microsoft.  Wallace investigated Microsoft's parental leave policy prior to his child's birth in part through the company's intranet website.  Wallace initially submitted a request to take parental leave before the birth of his child, but subsequently retracted it.  In April 2004, Wallace informed Microsoft's benefits coordinator that he was aware of his eligibility to submit for leave under the parental leave policy, but he did not intend to take it at that time.  Wallace did not resubmit a request for parental leave after his child's birth.

On April 1, 2004, Microsoft once again placed Wallace on unpaid leave due to its inability to accommodate his medical restrictions from his workers' compensation injury, specifically his travel restriction, and he was aware of his unpaid status.  His restrictions precluded him from traveling more than fifteen minutes due to his injury, driving, sitting for more than ten minutes, bending, or lifting more than ten pounds.  Wallace's doctor released him back to work with restrictions on April 23, 2004, and again on May 20, 2004, but Microsoft did not permit his return with the restrictions at that time.  In June 2004, Microsoft liquidated Wallace's ESPP.  In September 2004, after Wallace had received more than twelve weeks unpaid leave,[5] Microsoft informed Wallace that his position was not being held for him and that it intended to fill his position with another candidate.  Wallace's employment was ultimately terminated on May 27, 2005, but he continued to receive temporary total disability pay from Microsoft until 2008.

---

[5] Wallace had been on workers' compensation leave for 22 weeks by September 2004.

## II. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[7] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[8] In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[9]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[10] The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[11] If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[12] In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence

---

[6]Fed. R. Civ. P. 56(c).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[8]*Id.*

[9]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[11]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[12]*Celotex*, 477 U.S. at 323.

supporting its allegations.[13]   The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[14]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

### III.  Analysis

#### a.  *Wrongful Discharge, Breach of Implied or Express Employment Contract*

Wallace alleges that he was wrongfully terminated based on breach of an implied or express employment contract.  Wallace claims that he and Microsoft entered into an employment contract in 2000, and subsequently altered that agreement in 2003 through a new employment contract. Wallace asserts that the 2003 agreement resulted from a sexual harassment claim he made against his former supervisor in which he agreed to a transfer in exchange for certain job assurances. Wallace claims he signed the agreement and gave it to his current supervisor, Brian Field, who was to forward it to a Microsoft officer for signature.  He did not keep a copy of he agreement, and has not been provided a copy of the fully executed agreement.

Microsoft argues that Wallace's claim of implied contract fails because he admits to signing both an offer letter and an employee agreement in 2000.  Both agreements contained express language that his employment was terminable at-will, with or without cause, and that any modification to the agreements require a signed writing by both Wallace and an officer of Microsoft.

---

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[14]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In addition, any subsequent agreement must contain express language that the agreement intended to modify the terms of the 2000 agreement.  Microsoft asserts that no subsequent agreement exists, and because Wallace has not been able to produce a subsequent agreement signed by a Microsoft officer, summary judgment is warranted.

In support of its motion, Microsoft produced both the December 1, 2000 offer letter and the subsequent December 21, 2000 Employee Agreement, each signed by both Wallace and Microsoft. The Agreement contains an at-will employment provision that can only be modified by a subsequent, formal written agreement signed by a Microsoft officer.  The provision provides:

> Employment Terminable At Will, With or Without Cause, by Employee or Microsoft. I acknowledge and agree that my employment with MICROSOFT is not for any specific or minimum term, that its continuation is subject to MICROSOFT's and my mutual consent, and that it is terminable at will, meaning that either MICROSOFT or I will be free to terminate my employment at any time, for any reason or no reason, with or without cause, and with or without notice, pre-termination warning or discipline, or other pre- or post-termination procedures of any kind. I acknowledge and agree that any prior representations to the contrary are void and superseded by this Agreement. I am not entitled to rely and I shall not rely on any future representations to the contrary, whether written or verbal, express or implied by any statement, conduct, policy, handbook, guideline or practice of MICROSOFT or its employees or agents. Any such future contrary representations will not modify this Agreement or my at will status. Notwithstanding paragraph 14 below, my at will status may only be modified by a formal written "Employment Contract" signed by me and an officer of MICROSOFT and containing language expressly stating MICROSOFT's agreement to modify the terms of this Agreement.[16]

The existence of an express employment agreement that confirms the at-will relationship between the parties precludes a claim of an implied contract to the contrary.[17]  Because an express agreement

---

[16]Doc. 75-22 ¶ 2.  Paragraph 14, as referred in the Employee Agreement, is the choice of law provision identifying Washington law as the governing authority for interpretation of the Agreement.

[17]See Marsh v. Coleman Co., Inc., 774 F. Supp. 608, 615 (D. Kan. 1991) ("The general rule is that an express contract on a given subject matter, absent fraud or mutual mistake, excludes the possibility of an implied contract or covenant of a different or contradictory nature." Id. (quoting Duvanel v. Sinclair Refining Co., 170 Kan. 483, Syl. ¶ 1, 227 P.2d 88 (1951); see also Hibbert v. Centennial Villas, Inc., 786 P.2d 309, 311 (Wash. App. 1990).  Although the Employee Agreement expressly indicated Washington law governed in the choice of law

exists between the parties, the Court need not go further to evaluate whether an implied contract exists between the parties, and thus, we will not address the parties' arguments regarding that issue.

Here, a written agreement exists between the parties that unambiguously sets forth that Wallace's employment was at-will.[18]  Wallace does not dispute that he signed this Agreement.[19]  As a result, a subsequent, formal written agreement between Microsoft and Wallace, signed by both Wallace and a Microsoft officer, and containing express language altering the previous agreement, is required to overcome Wallace's at-will status.

Wallace argues that he signed a contract that altered his at-will status in 2003, after which he gave the signed copy to his then supervisor, Brian Field.  Wallace admits that he has never seen the contract containing a signature from a Microsoft officer.[20]  With regard to that agreement, Wallace contends that he does not remember the specifics of the agreement, but in general terms, recalls that he agreed to not pursue any type of action resulting from the harassment claim against his former supervisor, and it included information about moving him to a different type of position.[21]  Wallace testified in his deposition that he could recall no further information regarding the contract.[22]  Microsoft, however, denies the existence of any agreement entered into subsequent to

---

provision, neither party provided the Court with authority from the Washington courts in support of their arguments. This Court's independent research, however, confirmed that Washington law is consistent with Kansas law on at will employment and express versus implied contract issues.

[18]Doc. 73, ¶ 4(a)(6).

[19]*Id.*

[20]Doc. 75-3, p.9.

[21]Doc. 75-3, p.10.

[22]*Id.*  In Wallace's Response to Microsoft's Motion for Summary Judgment, he included an errata sheet, dated December 17, 2008, with corrections to his October 15, 2008 deposition testimony, which Wallace failed to sign and have notarized.  The errata sheet indicated, incorrectly, that the deposition took place on October 5, 2008. Through this errata sheet, Wallace attempts to correct his testimony from that described above by adding the

the December 2000 Agreement.   In a sworn affidavit from Mr. Field, he denies entering into, requesting, or receiving any agreement, written or oral, from Wallace concerning his employment with Microsoft.[23]

Wallace counters by arguing that there is sufficient evidence in the record to infer the existence of the contract.  In support, Wallace relies on emails between himself and human resources ("HR"), and between himself and Mr. Field.  First, he provides an email he sent to Karen Ruby in November 2002, where he asks if she is the HR manager for his area, and if he may contact her regarding HR issues.[24]  Wallace next relies on an email he received from Mr. Field on January 14, 2003 where Mr. Field asked Wallace if he "signed and returned the HR documents," to which he responded  the same day "yeppers, interofficed it Friday.  Did you get it yet?"[25]  It is from these

---

following:

> In addition upon further recollection, One it was agreed that I would not be put in her (Grace Lange's) management structure again - where I reported to her or where she was up in my chain of management.  Additionally, that I would be ensured a position for 3 years of a minimum level of level 63 which was the level I was at the time (ensuring that she could not go and have someone demote me or fire me for retaliation) as long as I didn't violate company policies.  I don't recall more specifics then these.

Microsoft subsequently argued that Wallace presented a sham errata sheet, which is nothing short of fraud on this Court.  In support, Microsoft submitted a declaration from Lora Appino, owner of Appino & Biggs, the court reporting service that transcribed Wallace's deposition.  In the declaration, Ms. Appino stated that the errata sheet provided was not of the format provided to Wallace for corrections, and further, the errata sheet provided to this Court was never returned to Appino & Biggs to become a part of the deposition record as required by the Federal Rules of Civil Procedure.  Wallace argues that he sent the errata sheet to Appino & Biggs by mail, and he has no idea why it was not received.  He further argues that because Microsoft had not filed a motion to suppress the errata sheet after becoming aware of its existence, it has waived the right to object.  Without addressing these issues, the Court finds that Wallace's "correction" attempts to alter as to what he had testified under oath without providing Microsoft the ability to cross examine his testimony.  It is apparent that the testimony Wallace attempts to submit was available to him during his deposition and is not provided to correct an item of confusion, but rather, seeks to add material facts to his testimony.  *See Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003).  Accordingly, Wallace's correction is not appropriate for consideration by this Court.

[23]Doc. 75-7.

[24]Doc. 80-19.

[25]Doc. 80-20.

emails that Wallace suggests a reasonable jury could infer the existence of an express employment contract.  We disagree.  While these emails may allow a reasonable jury to find that Wallace had an employment dispute with a previous supervisor to require his position be changed, we do not believe that a rational jury, viewing the emails and facts set forth in the record in a light most favorable to Wallace, could infer the existence of an express employment contract, signed by an officer of Microsoft setting a minimum employment period, and containing language superceding the 2000 Agreement.  Therefore, Microsoft is entitled to summary judgment on Wallace's breach of contract both express and implied contract claims.

### b.  Violation of the Kansas Wage Payment Act

Wallace seeks payment under the Kansas Wage Payment Act[26] ("KWPA") for wages he claims he earned under Microsoft's parental leave policy but was never paid.  In its motion, Microsoft posits that Wallace's claim that he is owed $8,000 for earned but unused family care leave fails for two reasons, thereby warranting summary judgment in its favor.  First, Microsoft argues that the parental leave benefit that Wallace claims to have earned is not classified as "wages" under the KWPA. Microsoft contends that its parental leave benefit, which provides up to four weeks of paid leave to an employee who takes said leave within one year of a child's birth, is not "compensation for services" as contemplated by the KWPA. Microsoft argues that an employee does not simply earn the benefit of parental leave by virtue of becoming a parent, and accordingly, it does not provide four weeks pay to an employee who decides against submitting for the leave.

Microsoft also argues that even if its parental leave benefit is construed as "wages" under the KWPA, Wallace failed to fulfill a condition precedent to receiving the benefit, and therefore, is not

---

[26]K.S.A. § 44-313 *et seq.*

eligible for any payment.  Microsoft's parental leave policy requires an employee to first submit a timely request for paid leave under the policy before becoming eligible to receive the benefit. Although Wallace submitted an initial request for parental leave, he voluntarily withdrew his request and failed to re-submit a request at any time during his employment with Microsoft.  As a result, he was not eligible to receive the benefit, and therefore, his claim for payment fails.

Wallace counters by first arguing that Kansas law applies a broad definition to "wages," which would include a fringe benefit due resulting from services performed under an employment contract.  Wallace asserts that Microsoft is attempting to enforce a definition of "earn" that the KWPA does not require.  In addition, Wallace suggests that the only requirements an employee must meet to be eligible for the parental leave benefit is to be an employee of Microsoft and have a child born or adopted.  Because Wallace satisfied both requirements, he contends that he is eligible for the benefit and payment is required.

Wallace further argues that the Doctrine of Prevention[27] precludes Microsoft from denying him payment under the company's parental leave policy.  Wallace claims that Microsoft informed him that he was ineligible to take parental leave while he was on unpaid leave, and because of Microsoft's misinformation, he did not submit a request for the paid parental leave.  During these communications with Microsoft, Wallace contends that he attempted to clarify issues relating to the benefit that he found confusing, and Microsoft continued to provide misleading and inaccurate information, which ultimately prevented him from taking advantage of the four weeks of paid

---

[27]The doctrine is one of equity which stands for the proposition that a party to a contract cannot benefit from its own actions in preventing another party from satisfying a condition precedent to the contract.  *Morton Bldgs., Inc. v. Dep't of Human Res.*, 10 Kan. App. 2d 197, 201, 695 P.2d 450, 454 (1985).

parental leave.  As a result, Microsoft should be estopped from denying Wallace payment under the benefit policy.

The Court must first decide whether Microsoft's parental leave policy falls under the KWPA. Under the KWPA, "wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."[28]  Neither party disputes that Microsoft is an employer under the Act, nor does either disagree that Wallace was an employee. Wallace argues that he is entitled to wages under the "or other basis" provision within the statute.  Kansas Administrative Regulations defines "or other basis" within the meaning of K.S.A. § 313(c) as:

> all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee.  Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.[29]

Wallace argues that Microsoft's parental leave benefit is a fringe benefit owed to Wallace due services he performed for Microsoft under an employment contract.  Microsoft disputes Wallace's assertions as previously discussed.

The wording of Microsoft's parental leave policy controls Wallace's entitlement to parental leave benefits.[30]  In determining whether a benefit is an "earned wage" under Kansas law, we must decide "whether the documents drafted by the employer place a condition precedent on entitlement

---

[28]K.S.A. § 44-313(c).

[29]K.A.R. § 49-20-1(d).

[30]*See Morton Bldgs.*, 10 Kan. App. 2d at 199, 695 P.2d at 453.

to the benefit or whether they attempt to impose a forfeiture."[31]  A benefit earned cannot be reduced or forfeited based on subsequent acts or circumstances.[32]

> The Kansas Supreme Court has defined a condition precedent as:
> something that is agreed must happen or be performed before a right can occur to enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced. A condition precedent requires the performance of some act or happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect.[33]

Here, Microsoft's parental leave policy provides that eligible employees may take, within the first year after the birth of or placement of a child,[34] up to four weeks of paid leave and up to eight weeks of unpaid leave in a single continuous block.[35]  Before an employee is eligible to receive paid leave, Microsoft's parental leave policy requires the employee to submit their intention to take the leave at least fifteen days in advance of the requested leave date.[36]  An otherwise eligible employee who does not submit their intention to take parental leave, however, is not eligible to receive leave or compensation.[37]  Thus, until such time that an otherwise eligible employee for parental leave submits a request to take the leave or to receive compensation, that employee has not "earned" the

---

[31]*Id.*

[32]*Id.* at 200, 695 P.2d at 453.

[33]*Weinzirl v. Wells Group, Inc.*, 234 Kan. 1016, 1020, 677 P.2d 1004, 1008 (1984); *see also Sweet v. Stormont Vail Reg'l Med. Ctr.*, 231 Kan. 604, 610-11, 647 P.2d 1274, 1280 (1982); *Wallerius v. Hare*, 194 Kan. 408, 412, 399 P.2d 543, 547 (1965).

[34]Pursuant to a revision to Microsoft's parental leave policy, effective January 1, 2005, an eligible employee was required to submit for and take the four weeks of paid leave within six months after the birth or placement of a child. Doc. 75, p.10 ¶ 33.

[35]Doc. 73, ¶ 4a §§ 29-30. [pretrial order stipulated fact]

[36]Doc. 73, ¶ 4a § 31.

[37]Doc. 73, ¶ 4a § 32.

wage, or benefit, provided for by the parental leave policy.[38]   Accordingly, the Court finds that Microsoft's parental leave policy required that Wallace submit his intention to take leave *prior to* qualifying for leave or compensation, and therefore, is a condition precedent to receiving any benefit of the policy rather than an attempt to impose a forfeiture.  The record is clear that Wallace did not request to take leave and receive compensation as required by the parental leave policy, and therefore, did not earn the wage that he is claiming.

Wallace's argument that Microsoft should be precluded from denying him payment under the company's parental leave policy under the Doctrine of Prevention also fails.  In support of his claim that Microsoft misled him and that he was confused about the terms of the policy, he relies on emails exchanged between himself Microsoft Human Resources personnel.[39]   In these exchanges, Wallace clarifies whether he can take leave intermittently (for example, leave for the first 4 weeks paid, work 2 weeks, then take the remaining eight weeks), whether vacation time can be used concurrently with the unpaid portion of parental leave, and whether time taken off during parental leave is subtracted from a consultant's work hours.  After reviewing this evidence, the Court cannot conclude that any reasonable jury would find that Wallace was either confused or misled by Microsoft.  To the contrary, the emails clarify and directly answer the questions Wallace submitted. Moreover, Wallace was explicitly reminded that he should not forget to submit his request to take parental leave.[40]   It is clear that Wallace did initially made a parental leave entry, and subsequently

---

[38]*See Sweet*, 231 Kan. at 612, 647 P.2d at 1281.

[39]See Docs. 80-22, 80-24, 75-33.

[40]See Doc. 80-22, p.2.

changed the entry.[41]  When Lauri Gray, Wallace's supervisor, asked Wallace to confirm that his

second entry was accurate, he responded on March 24, 2004 by stating:

> I had that ICL [parental leave entry] in before the accident, and it slipped my mind
> that it was even in there.  I believe I will be starting ICL in about 2 weeks (not 100%
> for sure yet) - my wife has a Dr's appointment Thursday so I will know then when
> she is going to be back to work so I'll go change it shortly.  I have not submitted the
> request for ICL/Leave to HR yet per the situation.  If memory serves, HR wants 2
> weeks advance notice before the request, so it sounds like the timing will be OK and
> meet everyones requirements.[42]

There is no evidence in the record that indicates Wallace submitted a request for parental leave after

withdrawing the initial request, nor do we find a reasonable jury could find any confusion or

misrepresentation as to Microsoft's parental leave policy based on the record before this Court.

Accordingly, we find the Doctrine of Prevention does not apply to this case.  Because Wallace's

claim for compensation under Microsoft's parental leave policy fails under the KWPA, and because

the Doctrine of Prevention does not apply, Microsoft is entitled to summary judgment on this claim

as a matter of law.

### c.  *Wrongful Termination of Employee Benefit Plan in Violation of ERISA*

Wallace claims that Microsoft violated ERISA by cancelling his participation in the

Employee's Stock Purchase Plan ("ESSP") and liquidating his account without his knowledge while

he was on workers compensation leave.  In its motion for summary judgment, Microsoft argues that

its ESSP is not a benefit plan governed by ERISA, and therefore, Wallace has failed to state a claim

upon which relief can be granted.  In support, Microsoft first cites to the Act itself, asserting that its

---

[41]Doc. 80-24.  Wallace's parental leave entries, however, were entered prior to the birth of his child.  *See id.*
Wallace indicates in his email that he entered his requests for parental leave prior to his on-the-job injury, which
occurred January 28, 2004.  Doc. 75-10, p.4 ¶ 10.  Wallace's wife gave birth to a child on February 10, 2004.  *Id.* at
p.9, ¶ 28.  The record is void of any evidence indicating Wallace requested parental leave after the birth of the child.

[42]Doc. 84-24.

ESSP is not a qualifying "employee benefit plan", nor is it an "employee welfare plan" or "employee pension benefit plan" so as to be governed by ERISA.  In addition, Microsoft relies on the Ninth Circuit decision in *Vizcaino v. Microsoft Corporation*,[43] wherein the court discussed Microsoft's ESSP and indicated it was governed by 26 U.S.C. § 423 and not ERISA.

In his response, Wallace agrees that although *Vizcaino* is a Ninth Circuit case, its analysis is instructive.  Wallace, however, concludes that the court in *Vizcaino* ultimately treated Microsoft's ESSP as an employee pension plan, and therefore, governed by ERISA. Wallace provides no other argument or authority with regard to Microsoft's motion on this ERISA claim.

While the Court agrees that *Vizcaino* is instructive, we disagree with Wallace's conclusion as to the court's treatment of Microsoft's ESPP.   In *Vizcaino*, the court discussed Microsoft's ESSP in the context of whether certain individuals were "employees" so as to be eligible for the ESSP, a benefit, the court concluded, was conferred under 26 U.S.C. § 426, a non-ERISA benefit.[44]  The court discussed cases in support of its holding that the plaintiffs were "employees" within the meaning of § 423, and therefore, were eligible to participate in Microsoft's ESSP.  *Vizcaino* did not, as Wallace suggests, treat the ESSP as a ERISA benefit, but instead, explicitly recognized it as a non-ERISA plan that must be made available to all Microsoft "employees."

We agree with the Ninth Circuit, and conclude that Microsoft's ESSP is not a benefit plan governed by ERISA.[45]  To be governed by ERISA, a plan must qualify as an employee benefit plan.[46]

---

[43]120 F.3d 1006 (9th Cir. 1997) (en banc).

[44]*See id.* at 1014.

[45]*See id.*, *see also Musachia v. Medtronics U.S.A., Inc.*, 2001 WL 1155272, at *3 (N.D. Ill. Sept. 28, 2001) (stating a mere stock option plan, such as an ESPP, is not governed by ERISA).

[46]*See* 29 U.S.C. § 1003.

-16-

An "employee benefit plan" means "an employee welfare benefit plan or an employee pension benefit plan."[47]  The Act further defines both a welfare benefit plan and an employee pension benefit plan, and we find those definitions do not describe Microsoft's ESPP.[48]  Microsoft's ESPP has no vesting mechanism, and was simply established to "provide eligible employees of [Microsoft] . . . who wish to become shareholders in [Microsoft] a convenient method of doing so."[49]  The plan was approved by the board of directors and by the shareholders of Microsoft as a mere stock option plan, and was to be offered to all Microsoft employees to confer the benefits of 26 U.S.C. § 423.[50]  The plan does not provide any pension benefits to employees or their beneficiaries, nor does it, through the purchase of insurance or otherwise, provide any medical or other benefits as described by ERISA.[51]  Accordingly, we find that Microsoft's ESPP is not governed by ERISA, and therefore, Microsoft is entitled to summary judgment on this ERISA claim as a matter of law.

### d.  Violation of the Family and Medical Leave Act

Pursuant to the Pretrial Order, Wallace alleges that Microsoft violated the Family and Medical Leave Act ("FMLA") by preventing him taking FMLA qualifying parental leave.[52]  In his Amended Complaint, however, Wallace also alleged that Microsoft failed to give him proper notice that his workers compensation leave was counted as part of his FMLA leave, as required by the

---

[47]29 U.S.C. § 1002(3).

[48]See 29 U.S.C. § 1002(1), (2)(A).

[49]Docs. 75, p.25; 79 pp.7-8 ¶¶ 40, 43.

[50]See Doc. 75-23.  See also Ershick v. United Missouri Bank of Kansas City, N.A., 948 F.2d 660, 668 (10th Cir. 1991) (citing Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 512 (1981)) (ERISA guarantees only the right to receive vested benefits).

[51]See id.

[52]Doc. 73 ¶ 6(e).

Act.[53]  Microsoft first argues, as it did with Wallace's claim regarding the KWPA, that Wallace failed to request to take parental leave, and therefore, there was no parental leave request for it to prevent.  Microsoft further asserts that it has no policy preventing an employee from taking parental leave while on unpaid leave status.  Based on Wallace's allegation in the  Pretrial Order, Microsoft contends that Wallace has failed to state a claim upon with relief can be granted, and summary judgment is appropriate.

Microsoft also argues that Wallace has waived his claim that it failed to inform him that his workers' compensation leave affected his FMLA leave because Wallace failed to include that claim in the Pretrial Order, which is controlling.  Microsoft suggests, however, that even if the Court does not find that Wallace has waived this claim, it is still entitled to summary judgment.  It asserts that Wallace was made aware of its workers' compensation policy, and was informed that his workers' compensation leave and any FMLA leave would run concurrently.  Moreover, Wallace was not able to return to work after he received the full benefit he was entitled under the FMLA, and therefore, has exhausted the protections of the FMLA.

Wallace again argues that he was confused as to how parental leave could be counted as FMLA leave when Microsoft would not agree to allow him to take the leave intermittently and when the FMLA required an employer to do so. Wallace also asserts that he has not waived his claims as to notice, as his claim under the FMLA revolves around Microsoft's failure to give proper notice as required by the FMLA.  Microsoft has done nothing more than claim that it informed Wallace to look to its website for information regarding the FMLA, and it has presented no evidence that it

---

[53]Doc. 52, p.10.

informed Wallace specifically that his leave was being counted against his FMLA entitlement. Accordingly, Wallace contends summary judgment is improper.

The Pretrial Order supersedes all pleadings and controls the subsequent course of this case.[54] While it is true that the Court should liberally construe a Pretrial Order to cover any of the legal or factual theories that might be embraced by the order's language,[55] it is also true that "the purpose of a pretrial order is to narrow the issues and thereby streamline litigation, and prevent surprise. To fulfill that purpose, a Pretrial Order that sufficiently defines the issues will generally control the lawsuit both at trial and on appeal."[56]

In the Pretrial Order, Wallace set forth as a theory of recovery "Violation of the Family Medical Leave Act (Count VII of the Amended Complaint)."[57] Wallace then identified the essential elements for his claim as follows:

First  Plaintiff was an employee of Defendant for at least six months prior to February 10, 2004.

Second  During the 12 month period prior to February 10, 2004, Plaintiff worked in excess of 1,250 hours.

Third  Plaintiff was eligible to take FMLA qualifying *parental leave* beginning February 10, 2004.

Fourth  Plaintiff was prevented by Defendant from taking FMLA qualifying paid *parental leave*.

---

[54]Doc. 73, p.1; *see also* Fed. R. Civ. P. 16(d).

[55]*See Fisherman Surgical Instruments, LLC v. Tri-anim Health Servs., Inc.*, 502 F. Supp. 2d 1170, 1176 n.2 (D. Kan. 2007) (arguments reasonably encompassed by pretrial order permitted); *see also* Fed. R. Civ. P. 8(f) (pleadings construed to do substantial justice).

[56]*Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979); Fed. R. Civ. P. 16(d) (pretrial order controls course of the action unless the court modifies it).

[57]Doc. 73, p.18 ¶ 6(a).

-19-

Fifth    Plaintiff suffered damages from Defendant's refusal to allow Plaintiff FMLA qualifying paid *parental leave.*

Sixth    The extent of Plaintiff's damages.[58]

In contrast to the Pretrial Order, Wallace's Amended Complaint alleged a number of facts to support his allegation that Microsoft failed to provide the notice under the FMLA. Wallace, however, recited no factual contentions within the Pretrial Order for an FMLA claim relating to notice, nor did he identify any of the essential elements required for such a claim. Rather, Wallace identified only those elements specifically relating to parental leave, not Microsoft's alleged failure to provide proper notice under the Act.[59] As a result of Wallace's specific choice of words used in presenting his claims in the Pretrial Order, we are unable to reasonably read the Pretrial Order as setting forth a notice claim under the FMLA. Therefore, the Court finds that Wallace has narrowed his FMLA claim to that of Microsoft's preventing him from taking paid parental leave, and has waived his notice claim under the FMLA.[60]

As discussed by this Court in paragraph III(b) of this Order, Wallace failed to submit a request to take parental leave as was a condition precedent to receiving payment or leave under the benefit. Accordingly, he was not entitled to receive payment or leave. Thus, Microsoft is entitled to summary judgment with respect to Wallace's FMLA claim relating to parental leave.

Accordingly,

---

[58]*Id.* at 20 (emphasis added).

[59]Microsoft, in its defenses, did address Wallace's notice claim as alleged in his Amended Complaint; however, we find this merely as Microsoft's attempt to preserve its defenses, and therefore, insufficient to sustain Wallace's notice claim under the FMLA.

[60]*See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not in the pretrial order are waived even if they appeared in the complaint.").

**IT IS THEREFORE ORDERED** that Defendant Microsoft's Motion for Summary Judgment (Doc. 74) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 11th day of June, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE